*Strozier & Deaver,* for defendant.

---

## CHARLTON v. THE STATE.

1. On a general exception to a whole charge of the court, no question arises but whether the whole charge is erroneous. *Reedy* v. *Bruner,* 60 *Ga.* 107.

2. The court charged the jury as follows: "The defendant insists that he did not intend to kill the deceased. I charge you that if the weapon was a knife and the defendant stabbed the deceased in the neck with it, intent to kill may be presumed." This was not error on the ground that the court omitted the qualifying words "and death resulted," inasmuch as the uncontroverted evidence shows that death did result from the wound inflicted.

3. There is no merit in the objection urged to the charge, that the court did not sufficiently set forth the contentions of the defendant.

4. On the subject of manslaughter the court charged the jury in part as follows: "Manslaughter is the unlawful killing of a human creature without malice, either express or implied, and without any mixture of deliberation whatever, which may be voluntary upon the sudden heat of passion, or involuntary in the commission of an unlawful act without

due caution and circumspection." The omission of the words "or lawful act" before the words "without due caution and circumspection" is not, when this excerpt from the charge is considered in connection with the entire charge, a ground for the grant of a new trial.

No. 3609. JANUARY 22, 1924.

Indictment for murder. Before Judge Meldrim. Chatham superior court. January 10, 1923.

*Raiford Falligant,* for plaintiff in error.

*George M. Napier, attorney-general, Walter C. Hartridge, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

BECK, P. J. Ben Charlton was indicted and tried for the murder of his wife, Mary Lee Charlton. With a knife he inflicted a wound upon her throat. He struck her one blow with the knife, and she died therefrom in a few minutes. The jury trying the case returned a verdict of guilty. Motion for a new trial was filed, which was afterwards amended; and the judge hearing the motion thus amended overruled it, and the movant excepted.

The evidence in the record is very brief. That introduced by the State shows that on the evening of the homicide the defendant came to his home, inquired for his wife, made some remarks showing displeasure with the attitude of his wife to himself, and then went out. Shortly afterwards the deceased came in, walked out on the front porch and sat down, and began to eat sugar-cane, peeling the same with her teeth; she had no knife. Her mother was with her a short time on the porch, but walked back in the house. In a minute or two the mother heard her daughter exclaim, "Oh, Mama, Ben has cut me," and she hurried to her daughter and found her bleeding profusely from the wound, which caused her death in ten minutes. The defendant ran off and concealed himself. He was arrested. He said to the person arresting him that he had cut his wife, but did not know he had killed her. He did not say why he cut her. The person arresting him, introduced as a witness by the State, testified: "I arrested this man. I got him from underneath a house; this man did not catch him as he was going over a fence in the back yard. After I arrested him I asked him what he had done with the knife; he said that he threw it away. He admitted that he cut the woman. He made a statement to me, freely and voluntarily. I did not threaten him, and I did not hold out any hope of reward. He said he and his wife couldn't get along, and he had cut her; and I told him that

she was dead, and he said that he did not mean to kill her." The defendant introduced two or three witnesses who testified to his good character. He made a statement to the jury, in part as follows: "This woman who died started to curse me. I didn't pay any attention to her. She got up and went on the street. After she went out on the street, I was on the stoop and had my knife whittling a piece of stick. She came back in half an hour, and she did not say anything when she went in; she and her mother were lying on the bed, and after awhile she came back and she had a meat knife in her hand, and she cursed me for a son of a bitch; she had her hand on my shoulder, and I looked up, and she had a knife that way [indicating], and I threw my hand up that way [indicating] to push her away from me. I did not know that she was cut until she said 'Oh, Mama, look how Ben cut me.' I was still on the stoop until I saw the blood, and I got scared and I went to the corner, and I saw a fellow behind me, and I went underneath the house, and the officer arrested me. I was underneath the house. I was scared. That is all."

1-3. The rulings made in headnotes 1, 2, and 3 require no elaboration.

4. Error is assigned upon the following charge of the court: "Manslaughter is the unlawful killing of a human creature without malice, either express or implied, and without any mixture of deliberation whatever, which may be voluntary upon the sudden heat of passion, or involuntary in the commission of an unlawful act without due caution and circumspection." Error is assigned upon this charge, on the ground that it was inaccurate as a statement of the law, "because it omitted, after the words 'unlawful act,' the following language, to wit, 'or lawful act,' and was prejudicial to defendant's case, because it excluded from the jury the defendant's right to have them consider his effort to resist the alleged assault upon him as a lawful act on his part." It is apparent from a reading of the charge here excepted to that the court was reading or reciting to the jury as a part of his instructions section 64 of the Penal Code, relating to manslaughter. That section was accurately and correctly stated, except that the words "a lawful act" were omitted before the words "without due caution and circumspection." Apparently this was a mere slip of the tongue; and while in some cases it might be cause for a new trial,

in the present case it is not. The judge had charged the jury on the subject of justifiable homicide, upon the subject of voluntary manslaughter, and upon involuntary manslaughter, giving the definition of involuntary manslaughter as it is written in the Code; and consequently the defendant was not deprived of the benefit of the theory that involuntary manslaughter was involved in the case. Besides this, he charged them upon the subject of "crimes and misdemeanors committed by misfortune or accident." The jury were given the privilege, under the instructions of the court, of deciding whether the defendant was guilty of murder, voluntary manslaughter, or involuntary manslaughter; or whether the homicide was the result of misfortune or accident; or whether he was guilty of any crime. With ample and correct instructions upon all these theories, we feel sure that the jury were not misled to the hurt of the defendant by the omission of the words "or lawful act" from the definition of manslaughter as it appears in the Code.

The assignments of error not specially noticed are without merit.

*Judgment affirmed. All the Justices concur.*